```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DEBBIE TAPPIN,

                          Plaintiff,

          -against-                            MEMORANDUM & ORDER
                                               12-CV-2016(JS)(AKT)
METROPOLITAN SUB. BUS AUTHORITY and
TRANSPORT WORKERS UNION OF
AMERICA, LOCAL 252,

                          Defendants.
----------------------------------------X
```

APPEARANCES
For Plaintiff:      Debbie Tappin, pro se
                    47 Grenada Avenue
                    Roosevelt, NY 11575

For Defendants
MSBA:               Valerie K. Ferrier, Esq.
                    MTA Bus Company
                    2 Broadway, 21st Floor, Rm. D21.71
                    New York, NY 10004

Union:              Michael Dennis Bosso, Esq.
                    Colleran, O'Hara & Mills, LLP
                    1225 Franklin Avenue, Suite 450
                    Garden City, NY 11530

SEYBERT, District Judge:

      Currently pending before the Court are: (1) Metropolitan Suburban Bus Authority's ("MSBA") motion to dismiss the Amended Complaint (Docket Entry 31); (2) Transport Workers Union of America, Local 252's (the "Union") motion to dismiss the Amended Complaint (Docket Entry 33); and (3) pro se plaintiff Debbie Tappin's ("Plaintiff") motion to disqualify the Union's counsel (Docket Entry 36). For the following reasons, MSBA's and the

Union's respective motions to dismiss the Amended Complaint are GRANTED, and Plaintiff's motion to disqualify the Union's counsel is DENIED.

BACKGROUND[1]

The Court presumes general familiarity with the factual background of this case, which is discussed in the Court's January 18, 2013 Memorandum and Order (the "January 2013 Order," Docket Entry 28).

Plaintiff initially commenced this employment discrimination action on April 23, 2012 against MSBA, Patricia Bowden ("Bowden"), Norma Perez ("Perez"), and the Union. Thereafter, the defendants filed motions to dismiss the Complaint. On January 18, 2013, the Court granted Bowden's and Perez's motions to dismiss, thus terminating them from the action. (See January 2013 Order.) The Court also dismissed the claims against MSBA and the Union, but allowed Plaintiff leave to file an Amended Complaint. The Court found that, although Plaintiff used a form complaint and "checked the boxes indicating that she was discriminated against on the basis of color," her allegations were conclusory and she had not sufficiently alleged that either MSBA

---

[1] The following facts are taken from Plaintiff's Amended Complaint and the documents attached thereto and are presumed to be true for the purposes of this Memorandum and Order.

or the Union took any action on the basis of her race or color. (January 2013 Order at 9, 11.)

Plaintiff filed her Amended Complaint on February 14, 2013. (Docket Entry 29.) Like in her original Complaint, Plaintiff's Amended Complaint alleges that she was employed as a bus operator for MSBA and was a member of the Union in 2010. (Am. Compl. ¶¶ 14-16; January 2013 Order at 2.) At that time, Perez was a dispatcher employed by MSBA and Plaintiff's supervisor. (Am. Compl. ¶ 14.) Part of Perez's job responsibilities included collecting employees' time cards. (Am. Compl. ¶ 20.)

According to the Amended Complaint, Perez had a history of discrimination against black females and Plaintiff "witnessed many unpleasant and racist confrontations between Norma Perez and black female bus operators." (Am. Compl. ¶ 17.) For example, Perez referred to black, female bus operators using derogatory language and twice submitted "false reports" against two black female operators, resulting in their termination. (Am. Compl. ¶¶ 17, 19.)

On July 27, 2010, Plaintiff asked a co-worker to submit her time card. (Am. Compl. ¶ 21.) The co-worker did so, but Perez refused to accept the card claiming that it was incomplete and that Plaintiff would not be paid until the card was completed. (Am. Compl. ¶ 21.) The co-worker found Plaintiff in the parking lot, and Plaintiff returned to the office. (Am. Compl. ¶ 22;

January 2013 Order at 2.)  Plaintiff filled out her card but forgot to check her schedule for the following day.  (Am. Compl. ¶ 22.)  As such, she called the office and Perez answered.  (Am. Compl. ¶ 22.)  Perez informed Plaintiff that she should come to the job site and check the schedule herself and hung up the phone.  (Am. Compl. ¶ 22.)

Days later, Plaintiff was told to contact her Union Shop Steward, Grover Howell, and report to MSBA General Superintendent John Freeman.  (Am. Compl. ¶ 23.)  Plaintiff was fired, but the Union grieved her termination and a hearing was held on August 10, 2010.  (Am. Compl. ¶¶ 23-24.)  According to the Amended Complaint, it was not until the hearing that Plaintiff saw two complaints from Perez alleging insubordination.  (Am. Compl. ¶ 24.)  Plaintiff advised her union representative that Perez's allegations were untrue and that cameras in Perez's office would confirm Plaintiff's account of events.  (Am. Compl. ¶ 25.)  Plaintiff also informed the representative of others who would attest to Perez's history of asserting false allegations against black female bus operators.  (Am. Compl. ¶ 25.)  In fact, Plaintiff recounted an incident in 2010 in which "Liz Doe" and Perez were "involved in a fist fight "because Norma Perez had filed a false report on Liz Doe."  (Am. Compl. ¶ 28.)  The union representative did not investigate the information Plaintiff provided to him.  (Am. Compl. ¶ 27.)

4

Plaintiff's termination was sustained, and the Union appealed the decision to arbitration. (January 2013 Order at 3.) The arbitration took place on September 8, 2010 and Plaintiff was represented by the Union Vice-President, Jay Brucaleri. (Am. Compl. ¶ 30.) The Union did not provide Plaintiff with a licensed attorney. (Am. Compl. ¶ 30.) At the hearing, Mr. Brucaleri informed Plaintiff that he did not investigate the information provided to him because he did not want to get other employees involved, "otherwise there would be some retaliation from MSBA if they testified at the hearing." (Am. Compl. ¶ 30.) On September 24, 2010, the arbitrator issued his Opinion and Award, finding that Plaintiff was not credible, but reinstating Plaintiff's employment as this was her first violation involving threatening behavior. (Am. Compl. ¶ 31; January 2013 Order at 3-4.) Plaintiff returned to work but experienced consistent harassment from her supervisors and management. (Am. Compl. ¶ 32.)

On or around May 2, 2011, Plaintiff filed a charge of discrimination against the Union with the United States Equal Employment Opportunity Commission ("EEOC"). (January 2013 Order at 4.) Plaintiff received a right-to-sue letter from the EEOC on April 5, 2012. (Am. Compl. ¶ 35.) In her Amended Complaint, Plaintiff asserts that the she was discriminated against on the basis of her race and gender, subject to a hostile work environment, and retaliated against. (Am. Compl. ¶¶ 9-10.)

5

DISCUSSION

The Court will address the motions to dismiss the Amended Complaint before turning to Plaintiff's motion to disqualify the Union's counsel.[2]

I.  Legal Standards

   A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

   B.  Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.

---

[2] The Court notes that Plaintiff has filed sur-replies in connection with Defendants' motions. (See Pl.'s Sur-Reply to MSBA's Mot., Docket Entry 56; Pl.'s Sur-Reply to Union's Mot., Docket Entry 53.) She has not, however, requested permission to do so. Though the Court need not consider unauthorized sur-replies, and indeed the Union has specifically objected to such consideration, the Court finds that the sur-replies do not change the analysis. (See Union's 4/30/13 Ltr., Docket Entry 57.)

6

Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss. Id. at 679 (citing Twombly, 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72. While pro se plaintiffs enjoy a somewhat more liberal pleading standard, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, see Colo. Capital v. Owens, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

II. MSBA's Motion to Dismiss

MSBA moves to dismiss the Amended Complaint because Plaintiff did not name it in her complaint to the EEOC and because Plaintiff has otherwise failed to state a claim against MSBA. The Court agrees that Plaintiff did not name MSBA in her EEOC complaint, therefore rendering any additional analysis unnecessary.

"A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant." Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)). Therefore, "[a]s a general rule, a court lacks jurisdiction to hear a civil action against a party that was not already named in an EEOC charge." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 389 (S.D.N.Y. 2002); see Bridges v. Eastman Kodak Co., 822 F. Supp. 1020, 1025 n.4 (S.D.N.Y. 1993) ("[D]eciding whether to dismiss a defendant because of a plaintiff's failure to name him as a respondent in his or her EEOC charge is a jurisdictional issue.").

Here, Plaintiff alleges that she properly brought a charge with the EEOC and that she received a right-to-sue letter before commencing this action. (Am. Compl. ¶¶ 2, 33-35.) However,

8

the charge to which she apparently refers[3] names only the Union, without any mention of either MSBA or Perez. (See EEOC Charge, MSBA's Br. to Dismiss Ex C., Docket Entry 32-3.) Indeed, Plaintiff asserts in the EEOC charge that "[t]he person responsible for my termination from employment is Patricia Bowden, who is the President of my Union (Local 252)." (EEOC Charge at 2.)

This does not end the inquiry, however. "[I]f there is an 'identity of interest as between the parties' then a Court may overlook a plaintiff's failure to comply with the EEOC filing requirement." Darden, 191 F. Supp. 2d at 389. In determining whether the identity of interest exception applies, courts consider the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence

---

[3] Although Plaintiff alleges that she filed a charge with the EEOC on October 10, 2010, the right-to-sue letter that she attaches to her original Complaint and Amended Complaint contains an EEOC Charge Number of 520-2011-01838, thus indicating a calendar year of 2011. (See Am. Compl., Ex. A at 10.) The EEOC charge provided by MSBA contains the same Charge Number, and reflects a date of May 13, 2011. Plaintiff has not disputed that MSBA attaches the appropriate charge or that she filed any other charge with the EEOC. In fact, in her unauthorized sur-reply, Plaintiff indicates that she filed an EEOC charge against MSBA in May 2011. (Pl.'s Sur-Reply to MSBA's Mot., Docket Entry 56, ¶ 4.)

9

>     from the EEOC proceedings resulted in actual
>     prejudice to the interests of the unnamed
>     party; 4) whether the unnamed party has in
>     some way represented to the complainant that
>     its relationship with the complainant is to be
>     through the named party.

Johnson, 931 F.2d at 209-10.

Each of these factors weighs against applying the identity of interest exception in this case. First, Plaintiff's allegations make it abundantly clear that she had a conflict with Perez and that her claims of discrimination directly involved Perez and MSBA from the start. Second, courts have made clear that the interests of unions and of the employer are not so similar that it would be unnecessary to name one to the exclusion of the other in an EEOC charge. See, e.g., Pajooh v. Dep't of Sanitation City of N.Y., --- F. App'x ----, 2013 WL 6570706, at *1 (2d Cir. Dec. 16, 2013) (finding that there was no identity of interest between the employer and the union); Vital v. Interfaith Med Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (same). Nothing about the circumstances of this case change that analysis. Third, the Court finds that there would be prejudice because MSBA has apparently "ceased all bus operations in Nassau County over a year ago." (MSBA's Br. to Dismiss at 7; see also Am. Compl. ¶ 12 (Plaintiff alleges that MSBA "was taken over by another Agency").) Finally, Plaintiff has not alleged, nor is there anything to suggest, that MSBA made any representations to Plaintiff regarding the Union.

Thus, MSBA's motion to dismiss the Amended Complaint against it is GRANTED, and Plaintiff's claims against MSBA are DISMISSED WITH PREJUDICE.

III. The Union's Motion to Dismiss

The Union also moves to dismiss the Amended Complaint, asserting that the Amended Complaint still fails to sufficiently allege that the Union acted with discriminatory intent against Plaintiff. The Court agrees.

In addition to prohibiting discrimination by employers--the legal standards of which are discussed more fully in the January 2013 Order and incorporated herein--Title VII also provides that it is unlawful for a labor organization "to discriminate against[] any individual because of his race, color, religion, sex, or national origin" or "to cause or attempt to cause an employer to discriminate against an individual." 42 U.S.C. § 2000e-2(c)(1), (3). Title VII claims arising out of a labor organization's representation of its members' interests "are subject to an analysis different from that applicable to Title VII claims against employers." See Oparaji v. United Fed'n of Teachers, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006). To establish such a claim, "the plaintiff must first demonstrate that the union breached its duty of fair representation to the member," id., by showing that the union's conduct was "'arbitrary, discriminatory, or in bad faith'" and that it injured the plaintiff, see Pinkard

11

v. N.Y.C. Dep't of Educ., No. 11-CV-5540, 2012 WL 1592520, at *7 (S.D.N.Y. May 2, 2012) (citing Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998); Spellacy v. Airline Pilots Assoc.-Int'l, 156 F.3d 120, 130 (2d Cir. 1998)). "Then, the plaintiff must show some indication that the union's actions were motivated by unlawful discrimination or retaliation." Oparaji, 418 F. Supp. 2d at 146; see also Ross v. Commc'n Workers of Am., Local 1110, No. 91-CV-6367, 1995 WL 351462, at *5 (S.D.N.Y. June 9, 1995) (holding that if a union breaches its duty of fair representation and is motivated by discriminatory reasons, such a claim may be brought under Title VII), aff'd, 1996 WL 80688 (2d Cir. 1996).

In the January 2013 Order, the Court held that, even if Plaintiff had sufficiently alleged a breach of the duty of fair representation, "the only allegation of discriminatory intent in the Complaint is Plaintiff's checking the boxes indicating that she was discriminated against on the basis of her color." (January 2013 Order at 11.) Thus, Plaintiff's allegations were deemed insufficient. Now, in her Amended Complaint, Plaintiff asserts that she was discriminated against because she is a black female and raises a number of allegations regarding "racist" behavior by Perez. (See generally Am. Compl.) However, upon close inspection of the Amended Complaint, it is apparent that the only purported allegations of discriminatory intent are attributable to Perez.

12

The actions of Perez, though, cannot be attributed to the Union. See Badlam v. Reynolds Metals Co., 46 F. Supp. 2d 187, 201-02 (N.D.N.Y. 1999) (noting that union liability extends only insofar as the individual in question was acting as a union steward and not as an individual employee).

At best, Plaintiff conclusorily asserts that the Union "intentionally and knowingly failed to provide the plaintiff with the same protection and representation normally offered and afforded other classes of MSBA employees." (Am. Compl. ¶ (g).) Such blanket assertions fail to rectify the deficiencies in the original Complaint. See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("Even liberally construed, plaintiffs' complaint fails to allege any facts relating to race, other than a conclusory statement that defendants retaliated and discriminated against plaintiffs based on their being African-American, which is insufficient under Iqbal."); see also Gear v. Dep't of Ed., No. 07-CV-11102, 2010 WL 5297850, at *5 (S.D.N.Y. Dec. 21, 2010) (Plaintiff "makes a single, conclusory allegation that [the union] would have acted differently if she were white."). Accordingly, the Union's motion to dismiss the Amended Complaint against it is GRANTED.

Moreover, the Court has already granted Plaintiff leave to replead once, and she has demonstrated an inability to sufficiently allege a claim against the Union. The Court notes

that Plaintiff, in her opposition to the Union's motion and in her unauthorized sur-reply, asserts that the Union's Vice President informed her that the Union has a policy of "not assigning a lawyer to represent black bus driver[s] at MSBA arbitration proceeding[s]." (Pl.'s Opp. to Union's Mot., Docket Entry 35, at 2.) However, Plaintiff cannot amend her pleadings through her briefs. See Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is longstanding precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). In any event, Plaintiff's own allegations belie any discriminatory intent on the part of the Union, suggesting that to the extent that the Union's actions were lackluster, it was because the Union was confident that Plaintiff's employment would be reinstated. (Am. Compl. ¶ 29.) Accordingly, any additional amendment would be futile and Plaintiff's claims against the Union are DISMISSED WITH PREJUDICE.

IV. Plaintiff's Motion to Disqualify Union Counsel

Finally, Plaintiff moves to disqualify the Union's counsel--Colleran, O'Hara & Mills, LLP--on the basis of a purported conflict of interest. She asserts that counsel "was retained to be the [c]ounsel for every active member, and therefore the

continued service on behalf of Union Local 252 against the plaintiff will exist as an actual conflict of interest." (Pl.'s Mot. to Disqualify, Docket Entry 36, at 1 ¶ 5.) Plaintiff's motion suffers from several fatal deficiencies.

First, as the Court has already determined that MSBA and the Union's respective motions to dismiss should be granted, Plaintiff's motion is moot. In other words, there will be no "continued service" on behalf of the Union, because Plaintiff's claims against the Union have been dismissed.

Second, Plaintiff's claim fails on the merits. Initially, the Court notes that motions to disqualify counsel require a very high burden and are looked upon with disfavor. See, e.g., Gabazyzadeh v. Taylor, 639 F. Supp. 2d 298, 300-01 (E.D.N.Y. 2009) ("[I]t is well-established that motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." (internal quotation marks and citations omitted)); Scantek Med., Inc. v. Sabella, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny. Courts are also chary to grant motions to disqualify . . . ." (internal citations omitted)). Here, Plaintiff has wholly failed to meet this high standard, particularly because Plaintiff's argument stems in part from her

15

flawed assertion that Colleran, O'Hara & Mills, LLP is the Union's "in house" counsel. (Pl.'s Mot. to Disqualify at 1 ¶ 5.) Rather, as is the case here, unions typically retain counsel to provide legal representation in particular circumstances. (See Union's Opp. to Pl.'s Mot. to Disqualify, Docket Entry 41, at 2-3.)

Moreover, counsel was not involved in any of the underlying proceedings, and therefore there is no "conflict." In fact, part of her claim is that she was not provided a lawyer during arbitration. (See Pl.'s Aff. in Support of Mot. to Disqualify, attached to Docket Entry 36, at 2 ¶ 4.) Given this lack of representation and that counsel is not "in house," there is no inherent attorney-client relationship between counsel and Plaintiff. Nor is she necessarily entitled to any representation in the current action.[4] See, e.g., Dean v. N.Y.C. Transit Auth., 297 F. Supp. 2d 549, 558 (E.D.N.Y. 2004) (denying plaintiff's motion to appoint counsel in an employment discrimination case, even though she had been granted in forma pauperis status).

Thus, Plaintiff's motion is patently meritless and this Court and other courts have rejected similar claims. See Ruff v. Coba Union Corr. Officers Benefits, No. 12-CV-6113 (JS)(WDW), 2013

---

[4] Plaintiff apparently references the Sixth Amendment right to counsel. (See Pl.'s Aff. in Support of Mot. to Disqualify ¶ 7.) However, "[t]he Sixth Amendment right to counsel applies only to 'critical stages' of a criminal prosecution." Meadows v. Kuhlmann, 812 F.2d 72, 76 (2d Cir. 1987).

WL 5960890, at *6 (E.D.N.Y. Nov. 6, 2013) (rejecting the plaintiff's allegation that, because counsel had represented individuals against whom the plaintiff lodged discrimination claims, counsel could not represent the union in plaintiff's discrimination action against the union); see also Durant v. Union Local 237, No. 12-CV-1166, 2013 WL 1232555, at *5 (E.D.N.Y. Mar. 4, 2013) (rejecting the plaintiff's claim that there was a conflict of interest because the union concurrently represented plaintiff and the supervisors who made disciplinary charges against her); Lettis v. U.S. Postal Serv., 39 F. Supp. 2d 181, 198 (E.D.N.Y. 1998) ("The Court is unaware of, nor does the plaintiff cite to, any case law in support of the plaintiff's argument that the representation of two employees in separate grievance proceedings by the same union official constitutes a per se breach of the duty of fair representation.").

CONCLUSION

For the foregoing reasons, MSBA's and the Union's respective motions to dismiss the Amended Complaint are GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE. In addition, Plaintiff's motion to disqualify the Union's counsel is DENIED.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for

the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mark this matter CLOSED and to mail a copy of this Memorandum and Order to pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March   31  , 2014
       Central Islip, NY